```
                    United States District Court
                       District of Massachusetts
 _____
                                 )
HAVEN REAL ESTATE GROUP, LLC,    )
                                 )
        Plaintiff-Counterclaim   )
        Defendant,               )
                                 )   Civil Action No.
        v.                       )   15-11845-NMG
                                 )
BELL ATLANTIC MOBILE OF          )
MASSACHUSETTS CORPORATION, LTD.  )
d/b/a VERIZON WIRELESS,          )
                                 )
        Defendant-Counterclaim   )
        Plaintiff.               )
                                 )
 _____
```

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises out of a dispute over an electric bill. Plaintiff/counterclaim-defendant, Haven Real Estate Group, LLC ("Haven"), an Illinois limited liability company whose sole member resides in Illinois, leases space to defendant/counterclaim-plaintiff, Bell Atlantic Mobile of Massachusetts Corporation, Ltd. The defendant corporation does business as Verizon Wireless ("Verizon") and is a Bermuda corporation with a principal place of business in Basking Ridge, New Jersey. Both parties allege that the other 1) breached its contractual obligations, 2) was unjustly enriched and 3) engaged in deceptive and unfair trade practices in violation of M.G.L. c. 93A ("Chapter 93A").

Haven's motion to stay and Verizon's motions to strike and for summary judgment are currently pending before the Court. For the reasons that follow, the motion to stay will be denied, the motion to strike will be allowed and the motion for summary judgment will be allowed, in part, and denied, in part.

I. **Factual Background**

   **A. The Lease**

This case involves property located at 11-21 Lawrence Street in Lawrence, Massachusetts ("the property"). In November, 1995, Verizon's predecessor-in-interest, Cellco Partnership d/b/a Bell Atlantic NYNEX Mobile, entered into a lease with Frank and Rita Palmisano to rent 500 square feet on the eighth floor of the building located on the property and a portion of its rooftop for a cellular communications facility. The lease requires Verizon to

> pay for its own power consumption used thirty (30) days after receipt of an invoice from LESSOR . . . .

In May, 2006, the property was converted into a condominium known as Baystate Building Condominium ("the condominium"). The condominium has two trustees, Baystate on the Common, LLC ("Baystate I") and Baystate on the Common II, LLC ("Baystate II"), and two units. Verizon's cell site base station is in Unit II.

In July, 2007, Baystate II granted a mortgage to Mt. Washington Cooperative Bank ("Mt. Washington"). The security interest included the "Collateral Assignment of Leases and Rents" on the property. In June, 2010, Mt. Washington's successor, East Boston Savings Bank, assigned the mortgage, including the "[l]eases, and the notes and claims secured thereby," to Secured Debts Cartersville, LLC. That LLC, in turn, assigned the mortgage and the interest in leases to Haven in September, 2010. In November, 2010 a certificate of entry for foreclosure was executed on the property and in January, 2011 Haven foreclosed on the property and bought it at auction.

There was also a separate, parallel assignment of Verizon's lease. In September, 2007, Baystate II assigned its lease with Verizon to Capital Group II, LLC. Currently, the lease is assigned to GTP Structures II, LLC ("GTP II").

**B. The Dispute Over the Electric Bill**

The parties provide different accounts of how the dispute over the outstanding electric bill unfolded. When the predecessor of Verizon's lease began, the property had only one electric meter and the electric company, National Grid, sent its bills directly to the landlord. In Haven's version of events, it began receiving invoices from National Grid in September, 2010 and there was an outstanding electric bill of $20,000 when it foreclosed on the property. Haven noticed that the bills

-3-

were atypically large and discovered that there were two power lines into the property in 2012. After investigating, it determined that the second line was connected to a Verizon cellular tower on the building's roof. Haven alleges that it presented Verizon with an invoice in June, 2014 and that Verizon failed to pay it within 30 days in violation of the lease.

In Verizon's recounting of the facts, Haven received an electric bill for approximately $150,000 in April, 2014. The invoice stated that there was a "termination notice in effect". Haven refused to pay the invoice and forwarded it to Verizon, even though it purported to be for all of the electricity used at the property, not just Verizon's portion. Verizon then negotiated with National Grid to pay $75,000 (one-half of the balance) in May, 2014 in order to gain time to resolve its dispute with Haven. The following month, Haven sent a second National Grid termination notice to Verizon, again purportedly refusing to pay, and informed Verizon that it was responsible for the entire balance. Verizon paid off the remaining balance of approximately $86,000 in August, 2014.

The parties agree that as of August, 2014, Verizon had paid the outstanding bill for electrical service on the entire property. Furthermore, Haven admits that 1) Verizon actually overpaid the bill by approximately $24,000, 2) National Grid

sent the reimbursement to Haven and 3) it kept the reimbursement rather than returning it to Verizon.

In August, 2014, after the electric service invoice had been paid, Verizon installed a separate meter so that it could be directly billed for its use of electricity. Shortly thereafter, Haven sent Verizon a letter asserting that it was entitled to reimbursement of payments it made on behalf of Verizon for electric service dating back to 1995. Haven demanded payment of approximately $1,666,000 but Verizon contends that there is no evidence that Haven paid any such amount for electrical service.

## II.  Procedural History

In June, 2015, Haven filed an amended complaint. Verizon timely answered and counterclaimed. Each party alleges that the other 1) breached its contractual obligations in the lease, 2) was unjustly enriched and 3) acted unfairly and deceptively in violation of Chapter 93A and requests compensatory and multiple damages and attorneys' fees and costs under Chapter 93A.

In June, 2016, Verizon moved for summary judgment on all claims and counterclaims. Thereafter, Haven filed its opposition to the summary judgment motion and moved for a stay. Verizon later moved to strike portions of the affidavit of Albert Adriani upon which Haven relies in its opposition to

summary judgment. This memorandum and order addresses those motions.

## III. Motion to Stay

### A. Legal Standard

Pursuant to Fed. R. Civ. P. 56(d), if the opponent of summary judgment demonstrates that it is unable to submit facts crucial to its opposition, a court may delay summary judgment or allow supplemental discovery. Extra time under Rule 56(d) is not, however, "to be granted as a matter of course." Troiano v. Aetna Life Ins. Co., 844 F.3d 35, 45 (1st Cir. 2016) (quoting Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014)). A court need not grant Rule 56(d) relief if the party opposing summary judgment is "unlikely to garner useful evidence from supplemental discovery." Id. (quoting Hicks, 755 F.3d at 743). Moreover, to be entitled to extra time, the party opposing summary judgment must demonstrate

> (i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion.

Alicea v. Machete Music, 744 F.3d 773, 788 (1st Cir. 2014) (quoting Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 10 (1st Cir.2007)).

**B. Analysis**

Haven moves to stay summary judgment pending completion of discovery on Fed. R. Civ. P. 56(d) grounds. It contends that it timely noticed the Fed. R. Civ. P. 30(b)(6) deposition of Verizon but the deposition was postponed due to mediation and has yet to be completed. Verizon responds that the motion to stay is part of long-running dilatory tactics from Haven. It submits that Haven's counsel never contacted Verizon to reschedule the deposition and has delayed discovery by failing to produce documents and missing deadlines.

Haven has not demonstrated that the prerequisites for relief under Fed. R. Civ. P. 56(d) have been met. Although there was, perhaps, good cause for the initial delay given the imminent mediation, Haven has provided no excuse for its failure to make arrangements to take the deposition after the mediation. See Alicea, 744 F.3d at 788.

Moreover, while the inability to meet one prong of the Rivera-Torres test suffices to defeat Haven's application, it has also failed to show that the information from a Rule 30(b)(6) deposition would defeat summary judgment. Id. Haven asserts that it would collect information about how much Verizon paid for electricity, its method for estimating its average usage and the process of converting to an independent meter. As Verizon aptly points out, however, in order to defeat summary

-7-

judgment, Haven must demonstrate that it paid Verizon's electric bill and has been damaged because it was not reimbursed. That information would necessarily come from Haven, not Verizon. Accordingly, Haven's motion to stay summary judgment on Rule 56(d) grounds will be denied.

**IV. Motion to Strike**

    **A. Legal Standard**

"It is settled" that an interested witness cannot generate a factual dispute to prevent summary judgment. Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 20 (1st Cir. 2000). If a witness attempts to prevent summary judgment by contradicting previous "clear answers to unambiguous questions" without explanation, the latter testimony will be disregarded. Id. (quoting Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994)). When evaluating contradictory testimony, courts are

> not obliged to accept as true or to deem as a disputed material fact[] each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party.

Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 33, n.5 (1st Cir. 2008) (quoting Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir.2008)). Furthermore, if a contradictory statement is made only after a summary judgment motion is filed, the "chronology [is] probative of the fact that the non-movant

was merely attempting to create an issue of fact." Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006).

**B. Application**

Verizon contends that, because Haven has proffered no explanation for why the interrogatory answers of Albert Adriani, Haven's manager, are contradicted by his subsequent affidavit, the latter testimony should be stricken. When first asked by interrogatory whether there were any communications between Haven and prior owners regarding electric bills, Adriani responded that there were none. Similarly, when asked if there had been any third party demands for payment for use of electricity at the property, Adriani responded in the negative and affirmed that Haven had made no payment to third parties for electrical service at the property.

In contrast to his earlier interrogatory answers, Adriani's affidavit states that 1) when Haven came into possession of the property, there were approximately $20,000 in outstanding electric bills, and 2) Haven paid for the electricity at the property starting in September, 2010. Tellingly, Adriani's affidavit concedes that he has been unable to procure copies of any of the invoices that Haven supposedly paid.

Verizon's argument that the contradictory affidavit should be stricken is well-taken. Without offering an explanation for

the change, Haven acknowledges in its opposition to the motion for summary judgment that "[the affidavit] does contradict Mr. Adriani's earlier response". See Torres, 219 F.3d at 20.  The sequence of events, specifically, the fact that the affidavit was submitted after the filing of the summary judgment motion, is also suspect. Orta-Castro, 447 F.3d at 110.  Furthermore, the fact that Haven has been unable to procure any of the invoices that it supposedly paid renders Adriani's testimony not only contradictory but also conclusory and unsupported. Garcia, 535 F.3d at 33, n.5.  Thus, because the Adriani affidavit with respect to payments to third parties for electric bills is contradictory and unsupported, Verizon's motion to strike it will be allowed.

**V.   Motion for Summary Judgment**

    **A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

Verizon moves for summary judgment on all claims and counterclaims in this action.

**B. Breach of Contract**

**1. Legal Standard**

Massachusetts law determines the elements of the parties' claims because the case is properly in federal court based on diversity jurisdiction. Edlow v. RBW, LLC, 688 F.3d 26, 31 (1st Cir. 2012). When a contract is unambiguous, its interpretation "is a question of law." Allstate Ins. Co. v. Bearce, 589 N.E.2d

1235, 1238 (Mass. 1992). Courts give the words in a written contract their "plain meaning." Freelander v. G. & K. Realty Corp., 258 N.E.2d 786, 788 (Mass. 1970). Courts are further guided in their interpretation of contracts by "[j]ustice, common sense and the probable intent of the parties." Kotler v. Spaulding, 510 N.E.2d 770, 772 (Mass. App. Ct. 1987).

To prevail on a breach of contract claim in Massachusetts a plaintiff must

> demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result.

Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016). If one of the parties to a contract assigns his contractual rights and obligations to a third party, that individual may enforce the contract. HRPT Advisors, Inc. v. MacDonald, Levine, Jenkins & Co., P.C., 686 N.E.2d 203, 209 (Mass. App. Ct. 1997). If a party to a contract assigns the rights to a contract more than once, the first assignment will prevail over the second. Aetna Cas. & Sur. Co. v. Harvard Trust Co., 181 N.E.2d 673, 679 (Mass. 1962) ("In Massachusetts, a prior assignee will take in preference to a later assignee . . . ."). Third party beneficiaries may also enforce contractual obligations if they

can "show that they were intended beneficiaries of the contract . . . ." Spinner v. Nutt, 631 N.E.2d 542, 546 (Mass. 1994).

The "fundamental principle" of damages that governs all contract cases is compensation, or the value that the plaintiff would have received had the contract been honored. Louise Caroline Nursing Home, Inc. v. Dix Const. Corp., 285 N.E.2d 904, 907 (Mass. 1972). Plaintiffs are not entitled to be made more than whole or put "in a better position than if the defendant had carried out his contract." Id.

### 2. Haven's Breach of Contract Claim

Verizon's first contention, that Haven cannot assert a valid breach of contract claim because it is not a party to the lease, is incorrect. Haven can enforce the lease as a party because its interest in the lease derives from the 2007 mortgage which included a collateral assignment of the lease. The 2007 assignment in the mortgage predated Baystate II's assignment to CCG. Accordingly, because Haven's interest in the lease derives from the first assignment, it is permitted to enforce the lease against Verizon. Aetna, 181 N.E.2d at 679.

Moreover, even assuming, arguendo, that Haven was not a party to the lease, it would be able to enforce the lease as a third party beneficiary. The assignment of the lease to GTP II specifically states that

> [the] Landlord and its successors and assigns are intended
> third party beneficiaries of this Assignment and shall have
> the right to directly enforce Assignee's obligations and
> assumptions hereunder . . . .

The plain meaning of that clause is that Haven, the landlord, is an intended beneficiary of the assignment and it may enforce the lease on GTP II's behalf. See Spinner, 631 N.E.2d at 546.

Notwithstanding its ability to enforce the lease, however, the undisputed facts demonstrate that Verizon is entitled to summary judgment on Haven's breach of contract claim because Haven has suffered no damages. Haven concedes that Verizon paid the $160,000 National Grid invoice. Haven even concedes that it retained the National Grid reimbursement of approximately $24,000 after Verizon over-paid the electric bill.

Even if the Court were to assume the validity of the $20,000 invoice that was purportedly outstanding when Haven came into possession of the note, which it does not for reasons outlined above, Verizon would be entitled to summary judgment. See Louise Caroline Nursing Home, Inc., 285 N.E.2d at 907. Haven's claim that it is entitled to reimbursement after conceding that Verizon paid the extensive, outstanding electric bill and Haven pocketed the refund defies logic. Haven has failed to produce a single invoice or any evidence of payments made other than the contradictory, untimely Adriani affidavit. The Court therefore concludes that, even when the facts are

viewed in the light most favorable to Haven, there is no evidence that it has been damaged and Verizon is entitled to judgment on the contract claim as a matter of law. See Garcia, 535 F.3d at 33.

### 3. Verizon's Breach of Contract Claim

Verizon asserts that, if the Court determines that there is an enforceable contract, it is entitled to summary judgment on its counterclaim for breach of contract. In Verizon's view, Haven violated the lease by forcing it to pay for the power consumption for the entire property and then keeping the National Grid reimbursement of Verizon's overpayment. Haven responds that there are factual disputes with respect to whether Verizon paid the total electric bill during Haven's ownership of the property based on the Adriani affidavit.

Verizon is entitled to summary judgment with respect to its counterclaim for liability for breach of contract. The lease states that Verizon will "pay for its own power consumption used thirty (30) days after receipt of an invoice . . . ." (emphasis added). Haven admits that 1) it received an invoice from National Grid for about $150,000 in April, 2014, 2) it told Verizon that it was required to pay the full amount even though the bill was for electrical service for the entire property and 3) after Verizon paid the electric bill it retained the $24,000 reimbursement for Verizon's overpayment. Accordingly, under the

-15-

plain meaning of the contract, the undisputed facts demonstrate that Haven breached the lease agreement between the parties to Verizon's detriment by 1) forcing it to pay the entire electric bill and 2) pocketing the reimbursement. Freelander, 258 N.E.2d at 788.

Conversely, genuine issues of material fact persist with respect to the amount of damages that Haven owes Verizon. While it is clear that Verizon is owed approximately $24,000 for the overpayment, it is unclear how much of Verizon's payments to National Grid related to its own consumption of electric service and how much to Haven's. Therefore, the amount of damages that Haven owes Verizon is an open question.

### C. Unjust Enrichment

Each party also claims that the other was unjustly enriched. Verizon moves for summary judgment of dismissal of Haven's unjust enrichment claim and summary judgment in favor of its own unjust enrichment claim. Pursuant to Massachusetts law, parties are prohibited from "overrid[ing] an express contract by arguing unjust enrichment." Reed v. Zipcar, Inc., 527 F. App'x 20, 24 (1st Cir. 2013) (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir.2006)); see also Zarum v. Brass Mill Materials Corp., 134 N.E.2d 141, 143 (Mass. 1956) ("The law will not imply a contract where there is an existing express contract covering the same subject matter."). Therefore,

because the Court has determined that the lease is a valid, enforceable contract that addresses Verizon's utility obligations, summary judgment of dismissal of Haven's unjust enrichment claim will be allowed.

Conversely, Verizon is not entitled to summary judgment on its own unjust enrichment claim and, with respect to that claim, its motion for summary judgment will be denied.

### D. Chapter 93A

#### 1. Legal Standard

Section Two of Chapter 93A prohibits the use of unfair or deceptive business practices and Section 11 includes a private cause of action that enables business entities to recover therefor. M.G.L. c. 93A §§ 2, 11.  In order to bring a claim under Section 11, an entity must have "suffer[ed] [a] loss of money or property" or demonstrate that it may experience such a loss in the future. Id. at § 11.

A Chapter 93A claim may arise from a breach of contract. Ahern v. Scholz, 85 F.3d 774, 798-99 (1st Cir. 1996).  A breach of contract alone, however, is insufficient to support a Chapter 93A claim. Id.  Instead, the party alleging that Chapter 93A was violated must demonstrate

> the use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party; i.e., the breach of contract has an extortionate quality that gives it the rancid element of unfairness.

Id. at 799 (quoting Atkinson v. Rosenthal, 598 N.E.2d 666, 670-71 (Mass. App. Ct. 1992)).  Courts have determined that the "extortionate quality" needed for a Chapter 93A claim exists if individuals have "withheld monies which they legally owed as a form of extortion . . . ." Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985).  For instance, actions that "disregard known contractual agreements and [are] intended to secure benefits for the breaching party" violate Chapter 93A. Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 821 (Mass. 1991) (internal quotations omitted).

### 2. Haven's Chapter 93A Claim

Verizon contends that it is entitled to summary judgment on Haven's Chapter 93A claim because its conduct, i.e. the overpayment of an electric bill, is not unlawful, unfair or deceptive.  It further submits that Haven has not shown the loss of money or property with respect to such a claim.  Haven responds that genuine issues of material fact remain as to damages.

As addressed above, Haven has failed to produce any evidence demonstrating that it "suffer[ed] [a] loss of money or property" before summary judgment. M.G.L. c. 93A §§ 2, 11. Furthermore, Haven admits that Verizon had its own meter installed on the property in August, 2014 and does not claim that any future losses will occur. Id.  Accordingly, there is no

genuine issue of material fact with respect to whether Haven suffered a loss and Verizon is entitled to summary judgment on Haven's Chapter 93A claim as a matter of law.

### 3. Verizon's Chapter 93A Claim

In Verizon's view, summary judgment on its Chapter 93A claim is appropriate because it paid for Haven's power consumption and Haven unscrupulously retained the reimbursement from National Grid. Viewing the facts in the light most favorable to Haven, it is possible that Haven was mistaken in its understanding of the contract and thus its behavior did not rise to the level of unscrupulous unfairness required to support a Chapter 93A claim. Ahern, 85 F.3d at 799 (quoting Atkinson, 598 N.E.2d at 670). Accordingly, genuine issues of material fact remain with respect to Verizon's Chapter 93A claim and summary judgment is not warranted.

## ORDER

In accordance with the forgoing, Haven's motion to stay summary judgment (Docket No. 43) is **DENIED**, Verizon's motion to strike (Docket No. 48) is **ALLOWED** and Verizon's motion for summary judgment (Docket No. 38) is,

> 1) With respect to Haven's claims of breach of contract, unjust enrichment and a violation of Chapter 93A, **ALLOWED**,

2) With respect to Verizon's counterclaim for breach of contract, **ALLOWED** but damages are to be determined at trial,

3) With respect to Verizon's counterclaim for unjust enrichment, **DENIED** and

4) With respect to Verizon's counterclaim pursuant to Chapter 93A, **DENIED**.

**So ordered.**

                                            /s/ Nathaniel M. Gorton
                                            Nathaniel M. Gorton
                                            United States District Judge

Dated February 22, 2017